School District, and we'll hear first from Mr. Goddory. Good morning, and may it please the Court. Chris Goddory for the appellant. Crystal Ayon. Your Honors, this is a Section 1993 and Title IX case in which a then five-year-old student at Uphouse Elementary School in Austin, Texas, within the Austin Independent School District, was repeatedly sexually assaulted by the bus driver of that bus over the course of several months in 2018. Now, these assaults occurred despite the fact that three years earlier, Austin ISD had placed video cameras in all of its buses based on another student who had been sexually assaulted repeatedly by a different bus driver, and despite the fact that district policy mandated that a bus monitor would be on the bus to observe the students and their safety. Now, in granting summary judgment for Austin ISD, the district court here misapplied the Rule 56 standard and essentially flipped it, and rather than taking the non-moving party's evidence as true and indulging inferences in the non-moving party's favor, the district court took the district's evidence as true, resolved inferences in the district's favor, improperly weighed the evidence, and ultimately engaged in fact-finding. Well, beyond just saying that, how is that the case? Well, yeah, so we could get into that. So, what the district court here did was it based its conclusion that the school district was negligent rather than deliberately indifferent. It's video monitoring policy, and it's... Well, you know that deliberate indifference is a super-duper-duper high hurdle to get over. It is, Your Honor. There are a legion of cases that say that. I mean, it's there, et cetera, et cetera. So, you know, we know what the facts here are. We read it, et cetera, and you're making your argument that the district court construed to the contrary. But help us understand what in the record or what otherwise supports meeting the deliberate indifference standard. Yes. So, and I agree with you, Judge. Deliberate indifference, it's a much higher standard than negligence. The district court ultimately concluded negligence here. But when you look at both deliberate indifference and the issue of whether the district was sufficiently on notice that there could be a constitutional violation, both of those analyses require a review of the district's knowledge. What did the district know at the time, right? So at the time that the district started the policy of putting the cameras on the buses, we know that when they made that decision, the district had already been recording. They had cameras at all the school campuses, 137 campuses within the school district. But deliberate indifference requires the showing of conscious disregard. So what's the evidence? I mean, don't just give me the cases, but what is the evidence that you either didn't get to put in or that disentitles the school from judgment as a matter of law at Rule 56, or what would demonstrate the conscious disregard? Is it your argument, well, they put the cameras in as a result of the first incident and then from that, what is the argument to show conscious disregard such that Rule 56 doesn't work here? You get to make another step. Right. So the school district testified in discovery that it knew that students were at risk in its district of being exposed to sexual predators. They testified that it was a risk to the district and it was a risk in general. So they knew there was a risk. So what did they do to mitigate that risk? Well, they first put cameras in the schools. And on top of that, they were live monitoring the cameras in the schools through a central command center that had access to every camera in every school, athletic facility, transportation facility, you name it. So at the time that they started the school bus policy, which did not involve live monitoring cameras, nobody watched those films unless and until some complaint was made that there was an incident. So when the district decides at first to put the cameras on the school buses, they tell the public, we want to know what's going on in the schools, on the school buses. So that obviously necessarily implies— At some point, you're going to have to answer my question. Well, no, this is—I'm getting there. You're talking about knowledge. I just thought I'd ask—I'm asking you a direct question. You come in on and you lose on summary judgment, you've got to show that either they're not entitled to it as a matter of law or that there are genuine issues of material fact that Rule 56 doesn't work. It's boilerplate. All I'm asking you is what is the evidence or whatever that would meet the conscious disregard? I mean, I get your argument about what they knew. I'm just trying to understand the conscious disregard. Are you saying, you know, they went past what they knew before? I'm just trying to ask. So if the school district judge knows that there are sexual predators out there, they know they need to film the students, whether it's in the schools or on the buses, but they know that whenever they're filming the schools, they're live monitoring them. They know—what they know is they have to monitor those videos, the video footage, or else kids are going to get assaulted like they are on the buses. So they know going in, like, whenever they started this bus policy, Judge, this wasn't their first—you know, this wasn't new to them. This wasn't some new endeavor where they're like, oh, gee, we need to figure out how to film these predators. I'm not in taking this position. Personally, considering what happened to a special needs 5-year-old, I won't put on the record what my real thoughts are. But putting that aside, you just keep talking about knowledge. I mean, that's what you keep saying. So are you wanting us to hold that the knowledge that the school district had satisfies the deliberate indifference? What? You started off in your argument. You said the district court erred because it construed the facts in a light most favorable to the non-movement. I'm just trying to get into the facts. What are you arguing? I mean, it's one thing just to state the principles, and I'm not in taking this position. But just what are the facts that you say the district court construed in favor of the district that you say would go towards showing conscious district court if you had a chance to go to trial? So knowledge is one part. The part that comes on top of the knowledge component is the school district made a conscious and intentional decision to not live monitoring the bus videos like they did at the schools. So they had already been monitoring at the schools for years. They made a decision to not do that on the buses. That is the intentional decision that they made. They had two choices. They could do what they had already been doing, which presumably they deemed to be effective, or they could do a less rigorous monitoring policy for whatever reason and allow kids to get assaulted on the school bus with nobody watching. So they consciously made a decision to steer away from what they were already doing for years and have a more lax policy on the buses. Would it matter if, in this case, it's my understanding that the 5-year-old did report to her mother the situation, who then reported to the bus monitor. Would it matter if the special needs child was not vocal such that they couldn't articulate to their parent that this happened? The idea depends upon reporting under this model that the school district has set up. And this child was capable of reporting. Would it matter if, in the facts, the child were not capable of reporting because they couldn't communicate some way? Yes, Judge, you are correct. The student at issue did eventually report the abuse. But as we put in our brief, the district admitted in discovery that relying on a 5-year-old special needs kid or any other elementary-aged kid to have the wherewithal to report abuse is not a proper policy to deter sexual predators. And so getting back to the evidence that the district court disregarded, the fact that the district court latched on to the fact that the district claimed for the first time in depositions in this case that these cameras were supposed to be deterrents to crime. But that explanation changes over time. The public statements that were made in a press conference said they want to know what's going on in the buses, which is pretty similar to a statement that would be akin to they would be monitoring like they do at the schools. In their interrogatory responses, they were asked to identify and describe the policies. They described the policy of not live monitoring. They say it was too much work. They couldn't do it. They mentioned nothing about deterrence. Now that everybody knows that they don't monitor, does that have any effect on the deterrence? Well, the problem is, Judge, is that at the time all this was going on, the employees in the district knew that the bus cameras weren't being monitored. They already knew they weren't going to monitor them. And so we deposed the bus driver. This is in the record. We asked the bus driver if he knew the cameras were being watched. If he knew he was being watched, would he have done what he did? And he answered, no, I would have never done it. Now, the problem is— He then said something else kind of contraverting that. Right, and the district court gets into that. But the problem is the district court takes the transportation director's deposition testimony as absolutely true that, hey, these are deterrents. Look, we have expert testimony here that cameras are not effective deterrents. The district had no controverting experts. But you're saying they're essential in the schools, but they're not effective. Well, so when I say a deterrent, Judge Jones, I mean their argument is if you just place a camera in a school bus and nobody ever watches it, that it's going to deter sexual predators or other assaults. But that's not what they do at the schools. They live monitor those. I don't—you know, they've got a live monitor. I mean, I'm not quite sure what you're talking about. I can see a room with about 1,000 cameras. Right, you're right, yes. Recess in the school and nobody can possibly see. Well, it's a bunch of monitors, and they cycle through. Well, I understand. But the idea is cameras—the expert testimony here is cameras by themselves are not effective deterrents. There is no controverting expert testimony on that point. In fact, the district, instead of trying to have an expert opine otherwise, they simply tried to exclude our expert and was unsuccessful to do that. Do you have an expert in the record that says that having cameras that are not monitored regularly is an ineffective strategy? Your expert says that, and that's in the record. Our expert effectively testified that cameras are not effective to serve as a deterrent to crimes, and it's in our brief. If they're not monitored. Correct, if they're not monitored. He also testified that the district claims that it's too much of a burden for them to monitor these buses. Our expert also testified just as they do at the schools, it would be possible for a security professional to live monitor those buses as well. And again, there was no controverting expert testimony otherwise. I have one more fact question, please. The fact question is, did the mother report that the buses were chronically late before anything was done, and did anything get done as a result of that, or was it not until her second report that something got looked at? That's correct, Judge. The mother had made some complaints to the school that her daughter's bus was arriving late repeatedly. Nothing was done. The videos were not checked at that point. It was not until this 5-year-old girl had the wherewithal to come forward and actually say what was going on, how she was being touched in the school bus. Was the reason it was late is because they were keeping her on the bus to molest her?  That's the reason the bus was late. So the fact that they didn't do anything on the first part, do we know that that's the reason it was late? Is there a fact issue on that point? Those first outcries that were reported were not responded to, or do we not know that? Those facts are pretty well established in the record. What he would do, he would wait for the bus monitor to get off the bus, and knowing that there was nobody watching the footage, he had the opportunity once she left the bus to be able to do what he did. And that made it late? Yeah, that was part of the issue of the lateness and the initial call to the district. Was it arriving late back to her home or when she went to school in the morning? I believe it was going back home, but that's something I can double-check that during. I got the other impression, but I don't know. All right, your red light.  Thank you. Sorry. All right, Mr. Brush. I . . . You reserve time for rebuttal, Mr. Gowdery? Yes, Your Honor, five minutes. Okay, thank you. May it please the Court. Good morning. My name is Jonathan Brush, and with my co-counsel, Kyle Stone, we represent the Appalee, the Austin Independent School District. The district court correctly granted summary judgment in this case, focusing its analysis on the deliberate indifference prong, both with respect to Plaintiff Section 1983 and Title IX claims. And the district court's analysis was correct because the appellant here, both below in their briefing, and now here, are largely describing a negligence case. The argument is that the district chose a security policy that was ineffective. That could have been better. That claim sounds a negligence, and Judge Stewart, you're correct. Deliberate indifference is a super duper high bar. It's, under this court's precedent, a lesser form of intent. In Doe v. Taylor, this court made clear that deliberate indifference sits higher than gross negligence. So the appellant has to point to facts showing that the district knew the sexual assault was going to occur, or that it would have been completely obvious to anyone that it would have occurred. So for the constitutional claim, recall that the appellant has to identify district policy that causes the injury. The district's policy has to be the moving force of the constitutional violation. Here, the appellant identified two purported policies, and while I think it's arguable whether either policy qualifies as a policy for Monell purposes, the district court assumed arguendo that they did, and the analysis is most clean following that approach and focusing on whether those two policies could have been the moving force. The two policies identified by the appellant are, one, the video monitoring policy, and two, the bus monitor policy. The video monitoring policy, according to the appellant, is that the district put cameras on their buses but did not monitor them until a report occurred. And the second policy, the bus monitor policy, was that the district permitted bus monitors to, in some circumstances, leave the bus. If we assume those are the two Monell policies, neither is facially unconstitutional. And because neither is facially unconstitutional, it's the appellant's burden to show that those policies were enacted with deliberate indifference to the obvious or known risk that constitutional violations would occur. Now... Mr. Brush, is there some evidence in this record that they didn't follow their first policy because they didn't check the videos on the dates that it was reported that the child was late arriving when the child may have been being molested when the child was late arriving? No, Your Honor. My understanding of the facts is that the bus arrived late in the evening as opposed to arriving late in the morning. But even under those circumstances... How does that affect... What is the difference between the two? Is it a different bus driver? No, it's not a different bus driver. The difference between the two is that the appellant's claim is that the abuse occurred when the bus monitor would leave the bus. And the facts show that that typically occurred when the bus would arrive at school in the morning or when the bus monitor... But the bus driver was on... The monitor was on the bus in the afternoon when the bus was late? Do we know that?  So no molestation was occurring during this late time? So the lateness was not attributable in any way to the molestation? I don't believe the lateness was attributable to the molestation, but two factors, Your Honor, too. Even if transportation staff failed to pull the video, let's assume for a moment that the lateness occurred in the morning or in the afternoon or that you had abuse either in the morning or the afternoon, a transportation or district official's failure to pull the video based upon a complaint that the bus had been late would be a violation of that policy. The district would not have followed its policy. So a single isolated violation would be respondeat superior liability. If the court were to hold the district responsible for that, it would collapse Monell's carefully calibrated requirements into a font of general tort liability. So I think we can set a failure to follow the policy to the side. Plaintiff's argument has to be that the policy itself was the moving force of the constitutional violation. What do we do with the expert report that failing to monitor, that it would have been easy to monitor because you're already monitoring a whole bunch of things and failing to monitor and letting everybody know that you're failing to monitor is not a safe policy. It's particularly when you're dealing with some people who might not be able to report. Even if we credit the expert's testimony, which I think the district court did credit the expert's testimony, the district court correctly recognized that that argument sounds a negligence. And so this court's precedent in Johnson versus Dallas Independent School District is clear that a school district's installation of security measures and then failure to use its own security measures is not evidence of deliberate indifference. It's evidence of negligence. Perhaps it could rise to gross negligence, but even then this court's precedence holds that deliberate indifference is a lesser form of intent that is higher than gross negligence. Even if it's intentionally like we are just not going to monitor this, even though we do it fairly seamlessly in other areas, that is still negligence instead of an intentional decision, and we're going to let everybody know this. And so the deterrent effect will be minimized. So even if you assume all of those facts to be true, it still sounds in a negligence claim because the district has put into effect a security measure. Perhaps it's not the best measure. This court's precedence in deliberate indifference cases routinely set dates. If the government falls below the standard, it's not necessarily a cause for commendation, but deliberate indifference looks for did the district do something to mitigate a harm? Did they do something that was not clearly unreasonable, obviously going to cause the constitutional violation? Stepping back a moment, the upshot of the appellant's position is that it should be so obvious that school employees will commit sexual assault in all circumstances that you have to have a live monitoring. Now, to Judge Jones's point, the evidence shows, and I think we heard from appellant's counsel, that even in the context of a school monitoring, there are screens that snap in and out, and nobody is consistently and constantly monitoring everything that happens. It still is, in most instances, going to rely on a report. So the fact that there is a video camera monitoring that in the event of a report, the district can pull it and find some evidence, that's a sufficient policy to overcome deliberate indifference as a matter of law. Even if the district... Is there any other standard that applies when the children are special needs and they can't respond? No, Your Honor. As opposed to depending upon reports. And I don't know that I think it's that unreasonable to assume that people are getting molested when I think the statistics are that one in four girls are sexually assaulted at some point these days. Not necessarily by school personnel, but by someone. And most of the time, someone they know. Understood. I think to the first question, Your Honor, the standard does not differ depending upon the child at issue. It's still a deliberate indifference standard. There's no lesser standard that applies. There has to be a conscious notion that a special needs child, by definition, doesn't fit the norm in terms of rules. Ergo, often, and I don't know what special needs means in this context, but special needs, the bus is different, the steps are different, the ingress and egress is different. Lots of things are different because of the special needs. The district is obviously conscious of special needs in terms of what it provides, et cetera, et cetera. I don't know. I guess if I add a five-year-old to it, but again, I don't know and don't probably need to know exactly what the special needs are. Sometimes that can mean mobility. Sometimes it can mean other things, and I'm not trying to go there. I'm just trying to push the point of a generic policy that sort of one size fits all versus a situation where definitionally the student doesn't fit that norm, but I don't know that that's even argued in this case. Maybe it's not. We don't know what was wrong with this kid, right? The record is, I think, relatively silent in terms of the specific conditions of the child and the child's IEP, the Individualized Educational Plan. To the question, Judge Stewart, there is no separate standard based upon a student's special needs standards for purposes of constitutional dimension. Now, the Individuals with Disabilities Education Act and related disability statutes such as Section 504 in the ADA create a whole other body of jurisprudence that governs this area, but we're looking specifically at a constitutional claim. I understand. This court, and to my knowledge no other court, has ever carved out a different standard than deliberate indifference for special needs children, nor should it, because to the extent that a different standard is applicable, it's better addressed in the bodies of substantive law governing disabled students, and we don't have a claim in this case under the IDEA, Section 504, or the ADA. If we step back, we're looking at a case of constitutional dimension, and this court's precedent on deliberate indifference has been clear for decades, that a negligence claim doesn't meet the test. Well, on the same test under Title IX also. That's correct, Your Honor, and I can, real quick, I want to just address the second policy because it didn't come up in oral argument, and that's the bus monitor policy. It suffers from the same deficiency as the video monitoring policy in terms of meeting the deliberate indifference standard. It's a facially constitutional policy, facially constitutional policy, to allow a bus monitor off the bus. It's not so obvious that in all circumstances that would cause a constitutional injury. Even if the court looks at both policies together, because appellant argues that the district court mistakenly isolated each policy and failed to look at the totality of the circumstances, the court will still reach the same result. Neither in isolation nor in tandem do those two policies establish deliberate indifference. The plaintiff also fails to establish an appropriate pattern that could connect the policy or the risk to the board, and that's essential in a Monell claim because it has to be the actions of the policymaker itself, the board of trustees, and the board of trustees has to be put on notice that its policies are causing constitutional violations, and that's typically done through a pattern of prior, highly similar constitutional violations. The district court found there was one prior instance. Appellant argues that the pattern would be as large as eight. Under a pattern of one prior instance, that doesn't meet the court's definition of a pattern as a matter of law. Even eight, if you were to accept all of the instances that appellant argues constitute the pattern, under Pineda v. City of Houston and Peterson v. City of Fort Worth, it's insufficient as a matter of law. In Pineda, this court rejected a pattern of 11 instances, and in Peterson, this court rejected a pattern of 27 known instances of excessive use of force. Those were both police cases, right? Correct, Your Honor, but we borrow the same jurisprudence, and one of the most telling features of those cases and similar cases is we look to the size of the governmental entity to assess the pattern. The school district is even larger than a police department. The record shows that the school district has 72,000 students, 10,000 employees, and 116 facilities. Based on a governmental entity of that size, a pattern of one or eight is insufficient as a matter of law. Now, Judge Jones, you raised the point about the standard under Title IX, and that's correct. Title IX also uses a deliberate indifference standard. The plaintiff's failure to overcome the deliberate indifference standard is fatal to the Title IX claim. Now, just to follow up on that, we don't have to get into whether the Polosino case is correct or not, do we? No, Your Honor. There's a lack of causation here. Is that your position? I agree that the court does not need to wade into the Polosino case or the district court decisions that seem to, and the district courts are split on this within the circuit, to recognize a heightened risk claim under Title IX, different from a more traditional Gebser assault claim where you have a specific victim, actual knowledge victim, and deliberate indifference. And the reason why is under the heightened risk test, the first prong is that you have to have a policy of deliberate indifference to reports of sexual misconduct. Here, there is no evidence that the district had a policy of deliberate indifference to reports of sexual misconduct. For instance, the first bust incident on which plaintiffs rely, the 2015 incident involving the bus driver Young, that case, the district investigated, terminated Mr. Young's employment, and had him prosecuted, and he is now incarcerated. Additionally, the district responded to that incident by putting cameras on its buses. That step, even if plaintiff argues that it was negligent or ineffective, negates deliberate indifference as a matter of law to the first instance in the pattern. Each incident that the plaintiff argues constitutes a pattern the district responded to. There's simply no evidence in the record of a disregard of reports of sexual misconduct. The court should not adopt the heightened risk theory under Title IX or wade into it because it wouldn't change the outcome in this case, in the first instance, because the appellant can't get over that first hurdle. The district court correctly recognized that even if the court were to assume heightened risk applied, that this plaintiff can't make out the elements, so we wouldn't change the result in this case. It would also substantially expand an implied private right of action under Title IX, which this court should not do, and it would run contrary to the Supreme Court's requirements in Gebser and Davis that under the spending clause, a governmental entity has to have actual knowledge so that the implied private right of action fits the legal fiction of the contractual relationship giving rise to liability. This case simply doesn't present the correct facts to even approach the heightened risk, nor should the court adopt the heightened risk as a matter of jurisprudence. All right. We believe that the district court correctly granted summary judgment, and this court should affirm. If there are no further questions, I'll yield the remainder of my time. Okay. Thank you, sir. All right. Mr. Goddery. All right. I can't hear you. Step up to the podium. You weren't on my list, but that's okay. Apologies, Judge. May it please the court, Anna McMullen, our rebuttal counsel, Randall Callinan got COVID a couple days ago. I hope he recovers. Your Honors, I'd like to first address the point made by counsel for the appellee regarding the official policy of Austin Independent School District. The transportation director, Chris Hapazizade, testified that he, as the director of transportation, had the ability to implement, review, and push forward the practices of the transportation division. He testified specifically that the policy that is articulated in plaintiff's briefing regarding not viewing the video footage is the protocol of the transportation division. The Monell standard does not require that the official policies be actual written policies, but rather that they are in full force or practice. Mr. Hapazizade testified that he did not have to get board approval when it came to implementing practices within the transportation division. Judge Stewart, to your point, the evidence in this case matters. It matters that our five-year-old developmentally delayed or speech-delayed child did not report immediately. Who said she was speech-delayed? That is in the record, Your Honor. It is in her IEPs. The reason that she was classified as a special education student was due to the speech delays. But we don't know what kind of speech delay it is, right? The speech delay in the IEP, and as her mother testified, was related to the fact that she did grow up in a bilingual household, and the ability for her to articulate to her teachers and to the school was delayed. And so she did have a hard time communicating to the school and to her teachers. That's why she was classified in the special education division. Does that mean she's mostly speaking Spanish at home? The language, an interesting distinction, Your Honor, and the language issue was the fact that she was not able to articulate correctly in either language. Ultimately, the outcry was made after a physical admission in the home. She urinated on the floor, and her mother finally realized that there was something wrong. That was when she began questioning the child at length. And it matters that she was not able to articulate. Is all this in the evidence? Yes, Your Honor, this is all in the evidence. Put your mic down. Sorry, the heels are not tall enough. No worries. The fact that this child was not able to report for three to four weeks is important in this case. The video footage that was captured on school buses was captured on hard drive-only cameras on the school buses. They had limited storage capacities. Once those storage capacities did reach that fullness, they were overwritten. So when the video of instances, or if there was not a report made within three to four weeks, that video would be lost. There was no way to recover it. The police chief for AISD testified that, or did agree that relying on special needs students to report any instances or allegations of assault on a bus is not an effective way of protecting its students. We will stop where you are, since you say facts matter, but go back to where we are. We've got an appeal where a summary judgment has been issued. Counsel started saying error number one is a judgment to the facts against a non-movement. B, counsel argument, everyone's arguing the law. So my question, since you don't have a lot of time, is A, are there genuine issues of material fact that warrant reversal of summary judgment? Or the proposition of law that's been made is that no facts, no matter how they're construed, can satisfy the deliberate indifference standard. So make your best minute and 11 on either one of those of why reversal. Not necessarily that what you're saying isn't true or good or whatever, but your own summary judgment, so you gotta. Yes, your honor. So the summary judgment hinges on the conscious choice of the district. So the facts show that the district had knowledge of the prior sexual assault in 2015. They then installed cameras on the school buses. That is supported in evidence that are hard drive only cameras. These hard drive only cameras on the interior of the buses are the only place on AISD campus that cannot be reviewed in that live room. Now, to Judge Jones's point, relying on someone to review video footage as it comes in consistently all the time is not necessarily effective. However, the district, this is supported by the facts in the record, the district's live cameras throughout the other campuses are cloud-based storage platforms. They are not overwritten, they are not lost. There is a fact issue here about when all of the abuse did and could occur. The only video footage that we have of abuse is from the three-week period prior to the outcry. That is when the school bus was arriving early at school and the bus monitor was leaving. However, the mother did report that the school bus was arriving late. However, the video was not pulled and not reviewed about those late arrivals home because the video was gone with respect to that time. That is a fact issue about whether or not it could have been caught, it could have been reviewed. Additional facts that lend to the summary judgment standard, Judge Stewart, the video cameras that were put on the inside of the buses were different than the video cameras that were installed later on the outside of the buses. The bus stop arm cameras had Wi-Fi capabilities and streaming capabilities where they could be reviewed and they were, in fact, reviewed by a third-party vendor. You know what? All of this, to me, is building up a case for negligence rather than deliberate indifference because the more... I didn't know there were cameras on the outside as well as the inside. There is a bus monitor. So you're saying, was the bus monitor present or was the bus monitor not present? When the actual abuse instances occurred, Judge Jones, the bus monitor was not present. The policy that is in place, that is written down, is that the bus monitor is supposed to be on the bus or there are supposed to be two adults on the bus. So they can't go to the bathroom. That is what the written policy says. However, the transportation director said that the official or the promulgated protocol or the accepted practice was that the bus monitors could leave the bus, leaving only one adult on the bus with the children. And so ultimately, the distinction between negligence and conscious indifference is the intentional choice. In these school buses on the interior, it was an intentional choice to put these hard-drive-only cameras on the bus. It was an intentional choice to have the policy be that there could only be a review if there was an incident reported by the students. In this case, by the students that were classified as special education students. And in the case of my bus... What is the evidence that this was a special bus? That is clear in the record, Your Honor. It was classified... The number of the school bus was classified as a special education-only transport bus. An uplift education, where my client was a student, was a special education classified venue. Well, that doesn't... Okay, but that doesn't... If it's right next door to the regular school, as some of them are, you might have been taking the regular students there also. Yes, Your Honor, an important distinction. But this school bus specifically was classified as a special education-only bus. The transportation director did testify that there are fleet vehicles for regular students and fleet vehicles for special education students. If there are no further questions, Your Honor. I get... Chief Judge? No, I guess not. Thank you. Thank you. The court will be in recess until 9 p.m.